**William H. YOUNG, Petitioner,**

**v.**

**J. J. PARKER, Warden, United States Penitentiary, Lewisburg, Penna., and Richard A. Chappell, Chairman, Homer L. Benson, Charlotte Paul Groshell, Lewis J. Grout, William F. Howland, Jr., Gerald E. Murch, Zeibel W. Neff, Joseph N. Shore, Parole Executive Members of the U. S. Board of Parole, Washington, D. C., and Hubert L. Robinson, U. S. Probation Officer, Southern District of New York, Respondents.**

No. 728.

United States District Court
M. D. Pennsylvania.

Aug. 12, 1966.

See also D.C., 256 F.Supp. 1008.

William H. Young, pro se.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for respondents.

### MEMORANDUM

FOLLMER, District Judge.

William H. Young, a prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, has submitted a document which is titled, "Motion to Vacate Sentence (Violation of Parole)", but which by Order of January 21, 1966 this Court

indicated would be considered as a Petition for Writ of Habeas Corpus.

A Rule was granted, a Response and Traverse have been filed. There was also filed an affidavit of Joseph N. Shore, a Parole Executive of the United States Board of Parole, Washington, D. C., after which a second Traverse was filed. A hearing on the petition was held on May 20, 1966.

Petitioner was sentenced July 30, 1952 by a United States Military Court to serve fifty years imprisonment on his conviction of murder. The sentence was progressively reduced by clemency to twenty years. He was released on parole January 25, 1962.

On June 2, 1965 petitioner was arrested under a parole violator's warrant. The application for the warrant gave, inter alia, as reasons for its issuance, petitioner had been reported by his wife as having threatened to kill her, as beating her and causing her to flee their home with her nine month and sixteen year old children for safety sake; she had been to the police for protection and had provided the United States Probation Office with a signed sworn statement; petitioner had admitted to the Probation Officer beating his wife, threatening her and drinking to excess, and petitioner had been referred for assistance to local agencies but he had failed to follow through.

Petitioner set forth nine allegations in support of his petition. All of these, with the exception of paragraphs 2, 5 and 7, are mere complaints that he was not afforded rights of formal legal proceedings, including bail, trial, etc.

■ Petitioner is currently serving the original sentence imposed upon him by the Military Court on July 30, 1952. When released on parole on January 25, 1962 he remained under the custody and supervision of the Attorney General. Doherty v. United States, 280 F.2d 35 (9th Cir., 1960).

■ Whether a parole should be revoked for a violation of the conditions under which it was granted rests in the sound discretion of the United States Board of Parole. Brown v. Taylor, 287 F.2d 334 (10 Cir., 1961); 18 U.S.C. § 4207.

■ Furthermore, where there is evidence before the Board showing a violation of the conditions of the parole, the courts should not interfere with the exercise of administrative discretion by the Board unless there is a clear showing that the Board acted capriciously or abused its discretion. Clark v. Stevens, 291 F.2d 388 (6 Cir., 1961).

■ If any reasonable basis existed upon which the Board could conclude that a violation of the conditions of the parole had occurred, the court should not attempt to substitute its judgment for that of the Board. Wright v. Settle, 293 F.2d 317 (8th Cir., 1961).

■ In Martin v. United States Board of Parole, 199 F.Supp. 542, 543 (D.D.C. 1961), Judge Holtzoff said:

"It must be borne in mind in this connection that there is no constitutional right to a hearing before the Parole Board on the question of revocation of parole. The only reason such a right exists is because it is prescribed by statute. * * *"

In paragraph 2 of the petition, it is stated:

" * * * Petitioner, while in custody at the Federal Detention Headquarters, New York City, requested counsel, but was not advised of his rights to have counsel appointed by the Court, *only he could retain one if desired.* Petitioner was and is indigent." (Emphasis supplied.)

In Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 238 (1963) in an exhaustive opinion, the Court held, inter alia:

"We hold due process does not require that indigent parolees be provided with appointed counsel when

they appear before the Parole Board in revocation proceedings."

In paragraph 5 of the petition, petitioner complains he was not given a hearing in New York. In his Traverse, petitioner does not deny that a preliminary interview was held in New York on June 25, 1965, on the contrary, he contends he was without counsel and that his wife was present on his instruction at the hearing in the United States Courthouse, New York, New York, and she was not allowed to testify.

In paragraph 7 of the petition, petitioner complains of the use of information against him which was obtained by perjury.

Respondent furnished a copy of a signed statement of the petitioner dated June 4, 1965, in which he requested postponement of the preliminary hearing. This was made on a Parole Board Form. Petitioner did not request a local revocation hearing on the form provided. There was also furnished the report of the United States Probation Officer stationed at New York, to the Board of Parole. This report showed that petitioner had been drinking excessively; had assaulted his wife and threatened to kill her, and had failed to follow instructions of the Probation Officer; that petitioner had requested postponement of hearing; that he appeared at a postponed hearing without counsel or witnesses; that while petitioner denied assaulting his wife, he did admit slapping her.

The affidavit of the Parole Executive of the Board of Parole reviews in detail the record of the Board in the instant case, including the report of the Probation Officer with relation to the preliminary hearing, the complaints against petitioner and the conclusions of the Probation Officer, his recommendation for a warrant and the action of the Board. It also sets forth petitioner's request for postponement of the hearing, of the subsequent interview of June 25, 1965 at which petitioner did not have counsel or witnesses; that the charges were discussed with petitioner; that the Bureau of Prisons was authorized to designate an institution to which petitioner should be returned at which time he would be given a revocation hearing before a Board member; that the United States Penitentiary, Lewisburg, Pennsylvania, was so designated; that on August 4, 1965 petitioner was again advised as to his right to have counsel and/or witnesses present; that petitioner waived this by signing a waiver form, and on August 14, 1965 he received a hearing before a Board member; that subsequently, the Members of the Board made a finding as to violation and ordered petitioner's parole revoked by Order dated September 8, 1965.

At the hearing before this Court, petitioner's wife was made available to petitioner. He did call her to the stand. She testified that sometime in March, 1965, she wrote a letter to the Probation Officer Robinson asking him to visit her in her home. On June 2, 1965 she wrote a second letter to the Probation Officer, in which she stated as follows: (Transcript of Habeas Corpus Hearing, pp. 54, 55)

" ' * * * My husband, William H. Young, has within the past two days tried to kill me first with an ice pick, secondly, and thirdly with a paring knife causing me to flee with my nine month old son as well as my sixteen year old daughter. These threats have always occurred when my husband is under the influence of alcohol, primarily wine. His last drunken rage occurred on 6/1/65 at about 10:00 P.M. This was the third time he threatened me yesterday. Since my marriage to him on March 21, 1964, there has been numerous times when he has physically assaulted me on week-ends when under the influence of these alcoholic beverages. These attacks and threats occurred both during my pregnancy and since I gave birth to my son on September 10, 1964.

"Since May 30 1965, when I was physically assaulted by my husband, I have not lived at home and it has been

necessary to go temporarily in the home of several of my friends with my children for my own safety. While voluntarily making this statement, I further would give this testimony in a Parole Violation Hearing if necessary. I am deathly afraid of my husband, and at this time I feel is dangerous for my own safety to go on living with him.' "

On cross-examination she testified that while the Probation Officer suggested a word or two in her said letter of complaint, it was her "free and voluntary statement." Mrs. Young testified that she did write the complaint letter in which she stated she feared for her life. She now testifies that she had lied in the accusatory letter and that what she said concerning petitioner therein was not true. She admitted petitioner drank to excess, that they had many arguments concerning his drinking and that they had family and money problems.

Probation Officer Robinson testified that he had indicated to Mrs. Young that an effort should be made to solve their problems without filing the complaint; that she insisted on filing the complaint; that Mrs. Young had said to him that on occasions when her husband was drinking and when going to bed he would drive an ice pick into the floor and say to her, "I am going to kill you before morning." He further testified that he called petitioner to his office and said to him that he was faced with a problem; that he had his wife running around the streets with the baby; that he should get out of their apartment; that he suggested to petitioner that he go to Lincoln Institute for psychotherapy; that petitioner called him and told him he had gone to the Clinic; that he and his wife had talked and decided to stick it out; that he then asked petitioner to put his wife on the phone; that the officer said to Mrs. Young, "Are you going to talk it through?" and she said, "Yes, I am talking it through because he is standing here with a butcher knife in his hand at this moment"; that it was at that time he called the Board of Parole at Wash-

ington, feeling something had to be done; that he then received telephonic approval of the warrant and that the petitioner was arrested on June 2. Petitioner was given a copy of the warrant application containing the charges and they were explained to him. Petitioner was also given an election form, which was explained to him. On this form he was able to note his admission or denial of the charges, as well as to indicate whether he desired and would have attorney representation and would present witnesses who could testify in his behalf as to the pertinent charges. Petitioner elected in paragraph 2 of the form that he be allowed to postpone his preliminary interview, he admitted he had violated one or more of the conditions of release and indicated that at a postponed interview he would have an attorney and/or witnesses who could provide information bearing on the question of whether his parole should be revoked. In keeping with his request, the interview was postponed and was subsequently conducted on June 25, 1965 by United States Probation Officer Robinson. At that time petitioner did not have counsel or witnesses and none appeared in his behalf. The charges were discussed with petitioner and his admissions, denials, statements and comments in mitigation were reported to the Board for further consideration on June 30, 1965.

Probation Officer Robinson also testified that at the preliminary hearing petitioner told the officer that he had no witnesses nor an attorney; that he knew petitioner's wife was in the building; that Mrs. Young had told the officer that she would not appear as a witness; that she had no intention of going back with him, although she would like to help him; that after the hearing petitioner spoke briefly to his wife and that petitioner did not come back after his conversation with her to convey any further information. On the contrary, petitioner testified that his wife was available in the building for the purpose of making a "statement, a retraction and clarifica-

tion", that she was there as a witness and that she was the only witness he wanted.

At the hearing before the court, the United States Attorney, on cross-examination, questioned petitioner concerning the conditions on the form that was signed when Young's parole was granted. He read paragraph 10 on Form 59a relating to the purchase, possession, use, etc., of narcotic drugs. A portion of said paragraph that was read, was as follows: "nor will I consume alcoholic beverages to excess." It developed that the form which petitioner signed did not contain the clause relating to alcoholic beverages, that the United States Attorney did not read from the form petitioner signed, but read from one that was subsequently adopted. Although this error was completely inexcusable, I feel it was harmless. At the bottom of the form that was actually signed by Young, the following appears:

"I understand that my release rests in the discretion of the United States Board of Parole and that if I do not demonstrate capacity and willingness to fulfill the obligations of a law-abiding citizen, or if my continuance on parole becomes detrimental to the integrity of the parole system, or incompatible with the welfare of society, I may be retaken on a warrant issued by the Board of Parole and reimprisoned pending a hearing to determine if my parole or mandatory release should be revoked."

It certainly cannot be questioned that the drinking propensities of this petitioner, while on parole, were detrimental to the integrity of the parole system and incompatible with the welfare of society.

The Court had the benefit of personal confrontation with the petitioner, his wife, and the Probation Officer. On the stand, the petitioner's wife stated that she had lied in her accusatory letter. The shifting of her testimony, her answers, and her general demeanor convinces this Court that she is unbelievable. Petitioner was excessively garrulous and thoroughly unconvincing. The Probation Officer's testimony was forthright and convincing.

The Probation Officer testified that petitioner's wife came to his office sometime in 1962. He was aware that petitioner and his wife were having problems, but he felt that they were of a marital nature and he deliberately avoided seeing them. Robinson further testified that the wife's accusatory statement was submitted to him on June 2, 1965, at which time she discussed some of their problems for which she was seeking relief. She then told the Officer that she had been out of their house, with a small infant, living at various neighbors' homes. The Officer then called petitioner to his office and suggested that he should move out of their family apartment and move in with his mother, because his wife was out on the streets and working at night. The Officer also testified that he tried to dissuade the wife from making the complaint and to try to compose their differences. She insisted on filing the complaint. The letters that the wife wrote and the personal interviews she had with the Probation Officer clearly indicated the difficulty she was having with the petitioner. Even up to the time of the preliminary interview, according to the testimony of the Officer, she clearly indicated to him that she was afraid of her husband and that she was not appearing as a witness. In Robinson's letter to the Board of Parole of June 30, 1965, he related that on June 24, 1965 petitioner's wife had sought an order of protection from the proper New York State Court and that she had stated to him that she intended to return to the said Court for such order if petitioner was returned to the community. The Probation Officer was fully advised concerning petitioner's behavior while on parole independent of the wife's accusatory letter.

I feel that the record is abundantly clear that the formula established in Hyser, supra, has been met in this case.

(1) Responsible officials (United States Probation Officer and Parole Executive of Parole Board) evaluated the report of the violation and a report was made to the Board, after which the warrant was issued.

(2) Petitioner was arrested and taken into custody in New York.

(3) A preliminary interview was held in New York which was near the place where the alleged parole violation occurred, and at petitioner's request, this hearing was postponed for nearly a month. That should have been ample time for petitioner to secure counsel and witnesses.

There is absolutely no evidence that the Parole Board, in revoking parole of this petitioner, acted capriciously or in any way abused its discretion and this Court will not interfere with the Board's decision. Clark v. Stevens, supra.

 The voluminous documents filed by this petitioner make it perfectly clear that his wife did report to the Board the fact of his abusive conduct and excessive drinking and the fact that she was fearful for her life and the life of her child when petitioner was around. The fact that she later retracted this complaint is aside from the point. She did so report and on her report the parole was in due course revoked. The interests of petitioner were at all times scrupulously protected and the Board was fully justified in revoking the parole.

The Petition for Writ of Habeas Corpus will be denied.

This petitioner has also filed:

(1) Request for appointment of an attorney.

(2) Motion to suppress statement of wife.

(3) Motion, pursuant to Rule 36, requesting Respondent to admit facts.

(4) Motion for written interrogation and productions of sworn documents, letters of petitioner, Parole Board files, United States Penitentiary files, and a list of questions to be answered by the United States Probation Officer.

(5) Motion for release on bail on own recognizance.

All of the motions will be denied.[1]

See also D.C., 256 F.Supp. 1002.

---

1. In addition, petitioner has filed motion for interlocutory injunction "for non-imposition (sic) of rules and regulations by the respondent upon the petitioner denying access to typewriter and typing materials." He states that he is a qualified typist, that the rules and regulations denying him the personal use of typing materials and typewriter constitutes cruel and unusual punishment under the "8th Amendment", that his civil and constitutional rights have been violated. This motion has been separately docketed and will be separately disposed of. It is only referred to here to give a true picture of petitioner's manifold maneuvers.